**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRIAN JONES,<br><br>            Plaintiff,<br><br>v.<br><br>LA JOLLA PHARMACEUTICAL COMPANY, KEVIN TANG, LARRY EDWARDS, CRAIG JOHNSON, LAURA JOHNSON, DAVID RAMSAY, and ROBERT ROSEN,<br><br>            Defendants. | Civil Action No. _____<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Brian Jones ("Plaintiff") alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against La Jolla Pharmaceutical Company ("La Jolla" or the "Company") and La Jolla's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78n(d)(4), 78n(e), 78t(a), and SEC Rule 14d-9, 17 C.F.R. § 240.14d-9, arising out of the Board's attempt to sell the Company to Innoviva, Inc. through its wholly-owned subsidiary Innoviva Acquisition Sub, Inc. (collectively "Innoviva").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading solicitation statement (the "14D-9") to be filed with the Securities and Exchange Commission ("SEC") on July 25, 2022. The 14D-9 recommends that La Jolla stockholders tender their shares in favor of a proposed transaction (the "Proposed Transaction") whereby La Jolla is acquired by Innoviva. The Proposed Transaction was first

1

disclosed on July 11, 2022, when La Jolla and Innoviva announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Innoviva will acquire all of the outstanding shares of common stock of La Jolla for $6.23 per share (the "Merger Consideration"). The deal is valued at approximately $149 million and is expected to close within 30 business days.

3. The 14D-9 is materially incomplete and contains misleading representations and information in violation of Sections 14(e) and 20(a) of the Exchange Act. Specifically, the 14D-9 contains materially incomplete and misleading information concerning the sales process, financial projections prepared by La Jolla management, as well as the financial analyses conducted by Cowen and Company, LLC ("Cowen"), La Jolla's financial advisor.

4. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing any amendment to the 14D-9, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to La Jolla's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

**PARTIES**

5. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of La Jolla.

6. Defendant La Jolla is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 201 Jones Road, Suite 400, Waltham, Massachusetts 02451. La Jolla common stock trades on the Nasdaq Capital Market under the ticker symbol "LJPC."

7. Defendant Larry Edwards has been President, Chief Executive Officer and a director of the Company at all relevant times.

8. Defendant Kevin Tang has been Chairman of the Board and a director of the Company at all relevant times.

9. Defendant Craig Johnson has been a director of the Company at all relevant times.

10. Defendant Laura Johnson has been a director of the Company at all relevant times.

11. Defendant David Ramsay has been a director of the Company at all relevant times.

12. Defendant Robert Rosen has been a director of the Company at all relevant times.

13. Nonparty Innoviva, Inc. is a corporation organized and existing under the laws of the State of Delaware. Innoviva, Inc.'s principal executive offices are located at 1350 Old Bayshore Hwy., Suite 400, Burlingame, California 94010.

14. Nonparty Innoviva Acquisition Sub, Inc. is a Delaware corporation and is a wholly owned subsidiary of Innoviva.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(e) and 20(a) of the Exchange Act.

16. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

17. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §

78aa, as well as under 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

### A. Background of the Company and the Proposed Transaction

18.     La Jolla is involved in the commercialization of therapies that improve outcomes in patients suffering from life-threatening diseases. The Company's GIAPREZA® (angiotensin II) injection is approved by the FDA as a vasoconstrictor indicated to increase blood pressure in adults with septic or other distributive shock. Its XERAVA® (eravacycline) for injection is approved by the FDA as a tetracycline class antibacterial indicated for the treatment of complicated intra-abdominal infections (cIAI) in patients 18 years of age and older.

19.     On July 11, 2022, the Company entered into the Merger Agreement with Innoviva. According to the press release issued that day announcing the Proposed Transaction:

> **Innoviva to Acquire La Jolla Pharmaceutical Company**
>
> ***Acquisition to strengthen Innoviva's infectious disease and hospital portfolio with addition of GIAPREZA® and XERAVA®***
>
> July 11, 2022, 07:30 AM Eastern Daylight Time
>
> BURLINGAME, Calif. & WALTHAM, Mass.--(BUSINESS WIRE)--Innoviva, Inc. (Nasdaq: INVA), a diversified holding company with a portfolio of royalties and a growing portfolio of innovative healthcare assets, and La Jolla Pharmaceutical Company (Nasdaq: LJPC), which is dedicated to the commercialization of innovative therapies that improve outcomes in patients suffering from life-threatening diseases, today announced that they have entered into a definitive merger agreement whereby Innoviva will acquire La Jolla. Innoviva has agreed to pay $5.95 per share for La Jolla, representing a premium of approximately 70% to the 30-day volume-weighted average price (VWAP), and an incremental $0.28 per share for additional cash proceeds received in connection with the divestiture of a non-core asset. Under the terms of the merger agreement, Innoviva, through a wholly owned subsidiary, will commence a tender offer on or before July 25, 2022 to acquire all of the outstanding shares of La Jolla for $6.23 per share in cash, or an implied enterprise value of approximately $149 million.
>
> La Jolla's lead product, GIAPREZA® (angiotensin II), was approved by the Food

4

and Drug Administration (FDA) in December 2017 to increase blood pressure in adults with septic or other distributive shock. La Jolla's second asset, XERAVA® (eravacycline), was approved by the FDA in August 2018 for the treatment of complicated intra-abdominal infections (cIAIs) in patients 18 years of age and older. This acquisition strengthens Innoviva's portfolio in infectious diseases, anchored by the company's recent purchase of Entasis Therapeutics Holdings Inc., an advanced late-stage clinical biopharmaceutical company focused on the discovery and development of novel antibacterial products.

"This acquisition represents a significant step forward in advancing our strategy to diversify operations and adds a highly complementary commercial franchise to our portfolio to accelerate long-term growth," said Pavel Raifeld, Chief Executive Officer of Innoviva. "We look forward to welcoming the La Jolla team to Innoviva and building upon the success of GIAPREZA and XERAVA."

"We are pleased to announce the acquisition of La Jolla by Innoviva, which we believe provides our stockholders with immediate value at a compelling premium," said Larry Edwards, President and Chief Executive Officer of La Jolla. "With Innoviva's shared commitment to improve outcomes in patients suffering from life-threatening diseases, Innoviva can continue to advance our mission and maximize the potential of our innovative therapies."

Assuming the minimum tender condition is met, any shares not tendered in the tender offer will be acquired in a second-step merger at the same cash price as paid in the tender offer. Closing of the transaction is subject to specified closing conditions, including that a majority of La Jolla's shares of common stock are validly tendered and not validly withdrawn. On closing, La Jolla will become a wholly owned subsidiary of Innoviva, and shares of La Jolla's common stock will no longer be listed on any public market.

The transaction was unanimously approved by the La Jolla and Innoviva boards of directors and is expected to close within 30 business days. Additionally, certain La Jolla stockholders holding approximately 40% of La Jolla's outstanding shares of common stock, have signed a support agreement under which such stockholders agreed, among other things, to tender their shares in the tender offer and support the merger.

Cowen and Company, LLC is acting as financial advisor to La Jolla and Gibson, Dunn & Crutcher LLP is acting as its legal advisor. Moelis & Company LLC is acting as financial advisor to Innoviva and Willkie Farr & Gallagher LLP is acting as legal advisor to Innoviva.

### B. The Materially Incomplete and Misleading 14D-9

20. On July 25, 2022, Defendants filed the 14D-9 with the SEC. The purpose of the 14D-9 is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to tender their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether or not to tender his shares in favor of the Proposed Transaction.

*Materially Incomplete and Misleading Disclosures Concerning the Management-Prepared Financial Forecasts*

21. The 14D-9 discloses management-prepared financial projections for the Company which are materially misleading. The 14D-9 indicates that in connection with the rendering of Cowen's fairness opinion, Cowen reviewed "certain internal financial analyses, financial forecasts . . ., reports and other information concerning La Jolla prepared by the management of La Jolla." Accordingly, the 14D-9 should have, but failed to, provide certain information in the projections that La Jolla's management provided to the Board and Cowen.

22. Notably, the 14D-9 fails to disclose a quantification of the assumptions underlying the "Five-Year Projections." Also, the 14D-9 fails to disclose a summary of the "Wall Street Projections" for the Company as used by Cowen. This omitted information is necessary for Plaintiff to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

*Materially Incomplete and Misleading Disclosures Concerning Cowen's Financial Analyses*

23. With respect to the *Discounted Cash Flow Analysis*, the 14D-9 fails to disclose: (a) the key data, inputs, and assumptions underlying the range of discount rates applied by Cowen; and (b) the Company's terminal values.

6

24. With respect to the *Public Trading Multiples and Selected Transactions Analyses*, the 14D-9 fails to disclose the objective selection criteria for each transaction, as well as the individual financial multiples and metrics for each transaction studied in the analyses. The 14D-9 also fails to disclose: (a) La Jolla's total debt and cash and cash equivalents, on a pro forma as adjusted basis for material business development transactions; and (b) the Company's fully diluted outstanding shares.

25. With respect to the *Illustrative BioPharma Premiums Paid Analysis,* the 14D-9 fails to disclose the specific transactions studied and the individual premiums for each transaction in the analysis.

26. Additionally, with respect to the *Research Analyst Price Target Analysis,* the 14D-9 fails to disclose the specific price targets and their sources observed in the analysis by Cowen.

### *Materially Incomplete and Misleading Disclosures Concerning the Background of the Proposed Transaction*

27. The 14D-9 fails to disclose information about confidentiality agreements entered into between the Company and parties to the sales process. The 14D-9 does not disclose if La Jolla entered into any confidentiality agreements containing "don't-ask, don't-waive" standstill provisions that are currently precluding a bidder from submitting a topping bid for the Company.

28. The disclosure of the terms of any standstill provisions is crucial to Plaintiff being fully informed of whether his fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

29. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable

to make a fully informed decision in connection with the Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

30. In addition, the Individual Defendants knew or recklessly disregarded that the 14D-9 omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

31. Specifically, the Individual Defendants undoubtedly reviewed the contents of the 14D-9 before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the 14D-9 omits the material information referenced above and contains the incomplete and misleading information referenced above.

32. Further, the 14D-9 indicates that on July 10, 2022, Cowen reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to La Jolla stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Cowen's financial analyses which has been omitted from the 14D-9, and thus knew or should have known that such information has been omitted.

33. Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

**CLAIMS FOR RELIEF**

**COUNT I**

**All Defendants for Violations of Section 14(e) of the Exchange Act and Rule 14d-9**

34. Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

35. Defendants have filed the 14D-9 with the SEC with the intention of soliciting La Jolla stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the 14D-9, which fails to provide the material information referenced above.

36. In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of La Jolla, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e).

37. Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading. . . ." 15 U.S.C. § 78n(e).

38. Specifically, and as detailed above, the 14D-9 violates Section 14(e) and Rule 14d-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of La Jolla shares and the financial analyses performed by Cowen in support of its fairness opinion; and (iii) the sales process.

39. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the 14D-9 is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the 14D-9 states that Cowen reviewed and

discussed its financial analyses with the Board during various meetings including on July 10, 2022, and further states that the Board considered Cowen's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the 14D-9, rendering the sections of the 14D-9 identified above to be materially incomplete and misleading.

40. The misrepresentations and omissions in the 14D-9 are material to Plaintiff, who will be deprived of his right to make an informed decision whether to tender his shares if such misrepresentations and omissions are not corrected prior to the end of the tender offer. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

41. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42. The Individual Defendants acted as controlling persons of La Jolla within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of La Jolla and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the 14D-9 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

43. Each of the Individual Defendants was provided with or had unlimited access to copies of the 14D-9 and other statements alleged by Plaintiff to be misleading prior to the time the 14D-9 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

44. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The 14D-9 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the 14D-9.

45. In addition, as the 14D-9 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The 14D-9 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing any amendment to the 14D-9 with the SEC unless and until Defendants agree to include the material information identified above in any such amendment;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the 14D-9;

C. In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

D. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 5, 2022					**ROWLEY LAW PLLC**

						*S/ Shane T. Rowley*
						Shane T. Rowley (SR-0740)
						Danielle Rowland Lindahl
						50 Main Street, Suite 1000
						White Plains, NY 10606
						Tel: (914) 400-1920
						Fax: (914) 301-3514
						Email: srowley@rowleylawpllc.com
						Email: drl@rowleylawpllc.com

						*Attorneys for Plaintiff*